UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: | . | Case No. 16-12356-JLG |
| | . | |
| NEELAM TANEJA, | . | Chapter 13 |
| | . | |
| Debtor. | . | |
| . . . . . . . . . . . . . . . . | | |
| NEELAM UPPAL, | . | Adv. No. 17-01025-cgm |
| | . | |
| Plaintiff, | . | |
| v. | . | |
| | . | |
| LAS PALMAS CONDOMINIUM | . | |
| ASSOCIATION, et al, | . | |
| | . | |
| Defendants. | . | |
| . . . . . . . . . . . . . . . . | | |
| NEELAM UPPAL, | . | Adv. No. 17-01026-cgm |
| | . | |
| Plaintiff, | . | |
| v. | . | |
| | . | |
| CHARLENE RODRIGUEZ, BARRY | . | |
| WILKINSON, and SADORZ Z. | . | |
| WILKINSON, P.C., | . | |
| | . | |
| Defendants. | . | |
| . . . . . . . . . . . . . . . . | | |
| NEELAM UPPAL, | . | Adv. No. 17-01027-cgm |
| | . | |
| Plaintiff, | . | |
| v. | . | |
| | . | |
| GEORGE INDEST and HEALTH LAW | . | |
| FIRM, | . | |
| | . | |
| Defendants. | . | |
| . . . . . . . . . . . . . . . . | | |
| | . | |
| NEELAM UPPAL, | . | Adv. No. 17-01028-cgm |
| | . | |
| Plaintiff, | . | |
| v. | . | |
| | . | |
| NATIONSTAR MORTGAGE, INC. and | . | |
| BANK OF AMERICA NEW YORK | . | |
| MELLON, et al, | . | |
| | . | |
| Defendants. | . | |
| . . . . . . . . . . . . . . . . | | |

```
. . . . . . . . . . . . . . . . .
NEELAM UPPAL,                     .   Adv. No. 17-01030-cgm
                                 .
              Plaintiff,         .
     v.                          .
                                 .   One Bowling Green
WELLS FARGO BANK, N.A.,          .   New York, NY 10004
                                 .
              Defendant.         .   Thursday, June 1, 2017
. . . . . . . . . . . . . . .    .   10:13 a.m.
```

TRANSCRIPT OF HEARING RE: MOTION FOR RELIEF FROM THE AUTOMATIC
STAY IN REM MFR, 17715 GULF BOULEVARD, UNIT 705, REDINGTON FL
    33708 FILED ON BEHALF OF NATIONSTAR MORTGAGE LLC [84];
RE: RESPONSE TO NATIONSTAR'S OBJECTION TO IN REM RELIEF [124];
MOTION TO AUTHORIZE ADMISSION OF DOCUMENTS AND JUDICIAL NOTICE
  FILED YB GEORGE F. INDEST III ON BEHALF OF HEALTH LAW FIRM,
      GEORGE INDEST [7]; MOTION FOR SUMMARY JUDGMENT AND
       ALTERNATE MOTION TO DISMISS FILED ON BEHALF
          OF HEALTH LAW FIRM, GEORGE INDEST [3]
          **BEFORE THE HONORABLE CECELIA G. MORRIS**
          **UNITED STATES BANKRUPTCY COURT JUDGE**

APPEARANCES:

For the Debtor:              NEELAM UPPAL, PRO SE
                             1370 Broadway, #504
                             New York, NY  10018


For Nationstar Mortgage,  Shapiro, DiCaro & Barak, LLC
LLC, as servicer for      BY:  ROBERT W. GRISWOLD, ESQ.
The Bank of New York      One Huntington Quadrangle,
Mellon f/k/a The Bank     Suite 3N05
of New York as Trustee    Melville, NY  11747
for Home Equity Loan      (631) 844-9611
Trust 2007-FRE1:

APPEARANCES CONTINUED.

Audio Operator:              Court Personnel

Transcription Company:       Access Transcripts, LLC
                             10110 Youngwood Lane
                             Fishers, IN 46038
                             (855) 873-2223
                             www.accesstranscripts.com


         Proceedings recorded by electronic sound recording,
            transcript produced by transcription service.

APPEARANCES (Continued):

```
For George Indest and     The Health Law Firm
The Health Law Firm:      By:  GEORGE F. INDEST, III, ESQ.
                          1101 Douglas Avenue
                          Altamonte Springs, FL  32714
                          (407) 331-6620

For Las Palmas            Law Office of Colin M. Linsenman
Condominium Association,  By:  COLIN M. LINSENMAN, ESQ.
et al:                    43 West 43rd Street, Suite 62
                          New York, NY  10036
                          (917) 979-3537

For Wells Fargo Bank,     Frenkel, Lambert, Weiss, Weisman
N.A.:                       & Gordon
                          BY:  ELIZABETH DOYAGA, ESQ.
                          53 Gibson Street
                          Bayshore, NY  11706


As Chapter 13 and 12      Law Offices of Jeffrey L. Sapir
Trustee:                  BY:  JODY L. KAVA, ESQ.
                          399 Knollwood Road, Suite 102
                          White Plains, NY  10603
```

4

| | |
|---|---|
| 1 | (Proceedings commence at 10:13 a.m.) |
| 2 | THE COURT:  16-12356, Neelam Taneja.  And let me do |
| 3 | adversary proceeding 17-01025, Uppal v. Las Palmas Condominium |
| 4 | Associates; 17-01026, Uppal v. Rodriguez; 17-01027, Uppal v. |
| 5 | Health Law Firm; and 17-01028, Uppal v. Nationstar Mortgage; |
| 6 | 17-01030, Uppal v. Wells Fargo Bank.  State your name and |
| 7 | affiliation. |
| 8 | MR. GRISWOLD:  Robert Griswold, Shapiro, DiCaro & |
| 9 | Barak, on behalf of Nationstar Mortgage. |
| 10 | MR. INDEST:  My name is George F. Indest, III of The |
| 11 | Health Law Firm here for myself and for The Health Law Firm. |
| 12 | THE COURT:  Very good. |
| 13 | MS. UPPAL:  Neelam Uppal, pro se. |
| 14 | THE COURT:  Raise your right hand. |
| 15 | NEELAM TANEJA UPPAL, DEBTOR, SWORN |
| 16 | THE COURT:  And Ms. -- you go -- Ms. Taneja, you go |
| 17 | by another name? |
| 18 | MS. UPPAL:  Yeah, Neelam Uppal is my other name. |
| 19 | THE COURT:  Okay.  Bring the microphone closer to |
| 20 | you.  Okay.  And so you have your bankruptcy in the name of |
| 21 | Neelam Taneja. |
| 22 | MS. UPPAL:  Taneja. |
| 23 | THE COURT:  Say that again for me? |
| 24 | MS. UPPAL:  Neelam Taneja. |
| 25 | THE COURT:  Taneja.  And Neelam Uppal is your other |

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

1  name.

2              MS. UPPAL:  Yes.  Yeah.

3              THE COURT:  Very good.

4              MS. KAVA:  Law Office of Jeffrey Sapir by Jody Kava

5  for the trustee.  I would just like to point out that there has

6  been a notice of appearance filed by our Arlene Gordon-Oliver

7  on behalf of the debtor, but not for these adversary

8  proceedings.

9              THE COURT:  Right.  So on behalf of the debtor, do

10 you wish to join us?

11             MS. DOYAGA:  Yes, I'm sorry, Your Honor.  Elizabeth

12 Doyaga from Frenkel Lambert appearing on behalf of Wells Fargo.

13             THE COURT:  Okay.  Please just be seated there.

14             MS. DOYAGA:  Thank you.

15             THE COURT:  Ms. Kava, do we have anything on the

16 underlying bankruptcy case or are we basically dealing with the

17 adversaries today?

18             MS. KAVA:  No.  We have everything on this case

19 today, the underlying bankruptcies and the confirmation later

20 on.  There's also trustee's motion to dismiss.

21             THE COURT:  You have a trustee's motion to dismiss?

22 And what are the grounds for your trustee's motion to dismiss?

23             MS. KAVA:  The debtor is over the statutory debt

24 limit --

25             THE COURT:  Okay.

6

1          MS. KAVA:  -- for Chapter 13.

2          THE COURT:  Okay.  Very good.  So I now have a lay of

3  the land.

4          Ms. -- do you prefer Ms. Ball?

5          MS. DOYAGA:  Ms. Doyaga.

6          THE COURT:  Stand up, please, when you address me.

7  We have various adversary proceedings on here.  Actually, you

8  may be seated.  I'm going to start -- let me start with what I

9  know.

10         And Ms. Uppal, you need to listen to me carefully and

11 correct me if I'm wrong.  You have had cases -- you had case

12 number 15-00594 that was filed in January 15th in the Middle

13 District of Florida and dismissed on September the 1st, 2015.

14 Is that correct?

15         MS. UPPAL:  Yes, Your Honor.

16         THE COURT:  And then you had a case again in Florida,

17 which was another Chapter 13, and it was filed 12-18946, and --

18 well, this is earlier, 12/19/12 dismissed 1/13, and that was in

19 the Middle District of Florida.

20         MS. UPPAL:  Yes, Your Honor.

21         THE COURT:  And then, you had another Chapter 13

22 filed 13-05601, 4/29/13 in the Middle District of Florida, and

23 it was dismissed on 9/17/13?

24         MS. UPPAL:  Yes, Your Honor.

25         THE COURT:  And then, you filed a Chapter 7,

7

1   00-09734.  It was filed in the Middle District of Florida, and

2   then you converted it to a Chapter 13 on 10/13/2000.  It was --

3   but you got a discharge on 7/21/03?  So you got a discharge in

4   that case?

5           MS. UPPAL:  Yes, Your Honor.

6           THE COURT:  So you have been discharged from your

7   individual debts in 2003?

8           MS. UPPAL:  Yes, Your Honor.

9           THE COURT:  Where is Ms. Gordon-Oliver today for the

10  -- yes, I'm sorry.  Okay.  That's for the bankruptcy.

11          UNIDENTIFIED:  That's correct, Your Honor.

12          THE COURT:  Okay.  We're now dealing with the

13  Nationstar's relief from stay first.  Okay.

14          MR. GRISWOLD:  Robert Griswold, Shapiro, DiCaro &

15  Barak, on behalf of Nationstar Mortgage, LLC.  Your Honor, we

16  have a motion -- we're seeking the relief on numerous factors.

17          THE COURT:  Okay.

18          MR. GRISWOLD:  We are seeking relief from the stay

19  nunc pro tunc.  There was an issue here where there's a

20  foreclosure -- this is a Florida property.  It's -- the

21  property address is 11715 Gulf Boulevard, Unit --

22          THE COURT:  Say that clearly again.

23          MR. GRISWOLD:  Yes.  11715 Gulf Boulevard, Unit 705,

24  Redington Shores, Florida 33708.

25          THE COURT:  Okay.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

8

1            MR. GRISWOLD:  And there had been an active

2  foreclosure on this file for quite a period of time.  I believe

3  it was a 2009 foreclosure action.

4            THE COURT:  Now, let me just be clear on what I

5  understand.

6            MR. GRISWOLD:  Yes.

7            THE COURT:  There -- Ms. Taneja had no automatic stay

8  in place after the 30-day period, but during that 30-day

9  period, Nationstar had started a foreclosure action.  And what

10 happened?

11            MR. GRISWOLD:  Okay.  So what happened with --

12 Nationstar had an ongoing foreclosure case that had been

13 commenced quite a while ago.  They had a sale schedule.  It was

14 for the --

15            THE COURT:  When was it started?

16            MR. GRISWOLD:  The -- let me see when the foreclosure

17 action was commenced.  I believe it was 2009, but I'm just --

18            MS. UPPAL:  No, Your Honor.

19            THE COURT:  I'll ask you in a moment.

20            MR. GRISWOLD:  The foreclosure had been pending for a

21 number of years.

22            THE COURT:  I need a date.

23            MR. GRISWOLD:  Okay.  Sorry, I apologize.  The JFS

24 was in June 2016 -- sorry, the case was commenced in 2013.  I

25 apologize.

9

1          THE COURT:  So the -- so after the bankruptcy filing

2  where she got -- this was long after -- she filed a case in

3  2013, and it was dismissed in September of 2013.  And this was

4  started right after that?

5          MR. GRISWOLD:  It was prior to the most recent three

6  bankruptcy cases.  So I apologize, I don't have the exact date

7  that the foreclosure was commenced.

8          THE COURT:  You're not helping me here.  I --

9          MR. GRISWOLD:  The law firm may want to add to this.

10 When was this foreclosure started?

11         MR. INDEST:  I don't know the exact date, Your Honor,

12 but --

13         THE COURT:  Stand when you address this court.

14         MR. INDEST:  I'm sorry.  I don't know the exact date,

15 Your Honor, but it was long before the present bankruptcy, and

16 it's been pending since 2009.

17         THE COURT:  You're not helping either.  All right.

18         MR. INDEST:  I'm sorry.

19         THE COURT:  So -- okay.  So then, what happened?

20         MR. GRISWOLD:  So our foreclosure action was stayed

21 multiple times by the debtor's repeated bankruptcy filings.  As

22 I --

23         THE COURT:  Well, the ones I have are 2000, 2012,

24 2013, and 2015.  That's when she filed.

25         MR. GRISWOLD:  Right.  One second.  So -- right.  So

10

 1  I believe the 2013, the 2014, and the -- the second, third, and

 2  fourth case, I believe all stayed our foreclosure action.

 3            THE COURT:  Okay.  I don't have a '14 case.  I have a

 4  -- what I have are 2000, 2012, 2013, and 2015.  And you have

 5  a --

 6            MR. GRISWOLD:  I apologize.  I misspoke when I said

 7  '14.  I meant the 2015.  I refer to that in my motion as the

 8  fourth bankruptcy case.

 9            THE COURT:  Okay.

10            MR. GRISWOLD:  So we had a -- we got a judgment of

11  foreclosure and sale in 2016.

12            THE COURT:  You did get a foreclosure and sale in

13  '16?

14            MR. GRISWOLD:  Yes.  And we had a sale scheduled for

15  the day after this bankruptcy proceeding was filed.  The debtor

16  had actually appealed some aspect of the state court

17  foreclosure action, as well, so my -- well, more the

18  foreclosure counsel for my client had made a motion in the

19  Florida state court to stay the sale.  In Florida, apparently,

20  the secured creditor -- the sale's controlled by the state

21  court, and so my first could not unilaterally stop the sale.

22  So they made a motion asking the state court to stop the sale.

23  The state court said no.  I've attached the state court

24  decision denying the request to cancel the sale.

25            THE COURT:  Even with -- in light of the bankruptcy,

1  the state court --

2          MR. GRISWOLD:  Well, the motion was actually made

3  prior to the bankruptcy having been filed.  The bankruptcy was

4  filed the day before the sale.  The morning of the sale, we got

5  notice of the bankruptcy by doing our -- well, sorry, I

6  apologize.  When I say "we," I mean the Florida foreclosure

7  counsel noticed the bankruptcy filing and reached out to the

8  court to notify them of the bankruptcy, but the sale went

9  through.

10          THE COURT:  Okay.

11          MR. GRISWOLD:  That's why we're seeking nunc pro tunc

12  relief because -- and I show communication in my motion from

13  foreclosure counsel to the state court prior to the sale

14  notifying them of the bankruptcy and asking them to cancel the

15  sale.

16          THE COURT:  All right.  So we know no stay was in

17  effect, but this sale actually went forward the day after, and

18  you're standing here telling me that your client attempted to

19  stop that, but under Florida law, that's not possible.

20          MR. GRISWOLD:  They were unable to.  The court

21  declined to do so.  Florida counsel advised me that his belief

22  as to why the courts do that is because occasionally the sales

23  will be retroactively validated in bankruptcy court.  If the

24  Court does not grant our nunc pro tunc relief and retroactively

25  lift the stay to the filing of the case, then we fully concede

12

 1  that the sale was void as a -- in violation of the stay --

 2              THE COURT:  Okay.

 3              MR. GRISWOLD:  -- and we will not go forward with it.

 4  We'll re-notice the sale.

 5              THE COURT:  Very good.

 6              MR. GRISWOLD:  So --

 7              THE COURT:  And you're asking for in rem relief to

 8  the --

 9              MR. GRISWOLD:  Yes.  We're asking for in rem relief

10  because of the debtor's serial bankruptcy filings, as the Court

11  has noted.  As I said, three of those prior filings did stay

12  our foreclosure action, and each time -- specifically the last

13  time, it was right on the eve of a foreclosure sale.  So the

14  debtor filed this instant case right on the eve of our sale.

15              There were several other properties that the debtor

16  was attempting to keep out of foreclosure sale.  So not all of

17  those prior bankruptcy filings could be (indiscernible)

18  directly to our instant action, but they -- in each one, our

19  foreclosure action was stayed and we were prejudiced.

20              THE COURT:  But you're -- for relief is on this

21  particular piece of property?

22              MR. GRISWOLD:  Yes.  We are looking for relief on

23  this particular piece of property, which was stayed repeatedly,

24  and the instant case appears to have been a direct attempt to

25  stay that action.  To be honest, if we are granted the nunc pro

1  tunc relief, which would be, I would say, the primary focus of

2  the motion, then the idea of it being -- of getting in rem

3  relief is, essentially, not necessary because the sale will

4  then be finalized.

5              THE COURT:  Very good.

6              Ms. Uppal, do you want to address everything that

7  you've just heard?

8              MS. UPPAL:  Yes, Your Honor.

9              THE COURT:  State your name for the record again.

10             MS. UPPAL:  Neelam Taneja.

11             THE COURT:  Okay.  You've got to speak very clearly.

12 Pull the microphone toward you more.  Just -- yes, there.

13             MS. UPPAL:  Neelam Taneja.

14             THE COURT:  Okay.

15             MS. UPPAL:  Judge, first of all, the case was in

16 front of Judge Garrity.  The similar argument was placed by

17 Wells Fargo, and Judge Garrity already denied in rem relief to

18 Wells Fargo for that incident.  Secondly, Nationstar --

19             THE COURT:  Is there an order on that?

20             MS. UPPAL:  Yes, Your Honor.

21             MS. DOYAGA:  Your Honor, Wells Fargo did make a

22 motion for relief from stay seeking in rem relief.  The judge

23 only granted relief from stay, and that's docket entry 85.

24             THE COURT:  Okay.  So it did not grant in rem relief,

25 but this was a different piece of property.

1          MS. DOYAGA:  That is correct, Your Honor.

2          MS. UPPAL:  But their arguments were, you know, same.

3    For the automatic stay violation, first of all, prior to the

4    2013 bankruptcy, I was current with Nationstar, and then I was

5    making payments to the trustee.  And there's actually a court

6    order which I would be presenting in the evidentiary hearing

7    that I actually filed a motion with the judge that they had

8    even received -- I had initially continued to make payments to

9    the bank.

10          They actually put my payments in their suspense

11   account, and then as soon as the bankruptcy was dismissed in

12   September of 2017, they filed a foreclosure action.  And the

13   judge -- I had attached the transcript copy where she had said

14   that if they would do that, that they would be in violation of

15   the automatic stay.  So there was actually, to begin with, the

16   whole action was started and based on payments not made during

17   the pendency of the bankruptcy.

18          Then the sale -- on the day of the sale, it was the

19   day prior.  The bank was noticed.  The bank's attorney was

20   noted.  The Court was noticed.  And the appellate court was

21   noticed.  The appellate court actually did say that in the

22   light of bankruptcy, there was stay and that order was

23   submitted.  And then Mr. Griswold is completely misrepresenting

24   to the Court that they wrote a letter to the Court stating to

25   cancel the stay and it's the Florida state law not to.  That is

15

1   totally untrue.  Florida state totally follows the federal law,

2   holding the sale when the bankruptcy is in place.

3           On the contrary, Nationstar actually deposited

4   $400,000 to purchase the property.  The -- I filed a motion for

5   reconsideration to the state court.  The state court then

6   actually entered an order vacating the sale and the --

7           THE COURT:  So the sale has been vacated --

8           MS. UPPAL:  Yeah.

9           THE COURT:  -- based on the bankruptcy?

10          MS. UPPAL:  Yeah.

11          MR. GRISWOLD:  I haven't seen such an order, Your

12  Honor.  And, Your Honor, with respect to the statement that

13  my --

14          THE COURT:  Let her finish.

15          MR. GRISWOLD:  I apologize.

16          MS. UPPAL:  So Mr. Griswold's answer --

17          MR. GRISWOLD:  Do you have a copy of that order from

18  the state court?

19          MS. UPPAL:  Yes, I -- my attorney has the -- and the

20  Nationstar file.

21          MS. KAVA:  If I could just address, there's lots of

22  documents that I asked Ms. Neelam for that she hasn't

23  presented.  It's in the Nationstar filing, but Mr. Griswold

24  would know about it, so I don't have --

25          MS. UPPAL:  Judge, I can get it.

16

1          THE COURT:  Okay.  All right.  I hear you.  All

2   right.  Go ahead.

3          MS. UPPAL:  So he says that this is what our answer

4   is, but we reserve the right to change our answer if we find

5   something else in discovery.  In other words, we admit we're

6   going to just lie that we didn't do anything.  If you got

7   proof, then we'll change our answer.  So here, we have proof

8   that they did not --

9          THE COURT:  I don't have it.  You don't have it in

10  front of me, so I don't know what --

11         MS. UPPAL:  I can get it from my bag.

12         THE COURT:  Okay.  Well, let me just say this then.

13  I don't think it's necessary because I'm not going to give you

14  nunc pro tunc.  So I'm not going to go back to that.  I mean,

15  what I will do, though, is you filed bankruptcy so many times,

16  you've been in state court 17 times.  You've been -- and you've

17  been in the Middle District of Florida 11 times, and I would

18  assume this is all for these properties.  So what I am going to

19  do is give him in rem relief.

20         So I'm not going to let it go nunc pro tunc, so that

21  sale -- if that state court said it was null and void, so be

22  it, it's void already.

23         MR. GRISWOLD:  Yes.

24         THE COURT:  So you're going to have to redo the sale.

25  And the stay is no longer in place anyway because the 30 days

1    is over.

2            MR. GRISWOLD:  Uh-huh.

3            THE COURT:  So we're --

4            MR. GRISWOLD:  Thank you very much, Your Honor.

5            THE COURT:  So all right.  I'm granting their relief

6    from the stay because your argument was simply over the nunc

7    pro tunc, and I'm not giving nunc pro tunc.

8            MS. UPPAL:  Judge, I'm also arguing over the stay

9    because that is my primary home.  And --

10           THE COURT:  The stay is in effect.  It was in effect.

11   Judge Garrity has ruled the stay was in effect, and it was in

12   effect 30 days after you filed.  So, I mean -- not in effect.

13   So I'm just simply ruling exactly what Judge Garrity has

14   already said and what is true under the law.  You only had 30

15   days.  There was no extension of that stay, and I'm simply

16   giving them a comfort order and I'm giving them in rem relief.

17   That's Nationstar.

18           MR. GRISWOLD:  Thank you, Your Honor.  And we will do

19   whatever we need to make sure that the sale is cancelled.

20   We'll vacate the sale in Florida.

21           THE COURT:  Exactly.  So that's done.  Now, we're at

22   the adversary proceedings.

23           You have an adversary proceeding against Las Palmas

24   Condominiums, right?

25           MS. UPPAL:  Yes, Your Honor.



18

1            THE COURT:  And this one is -- okay.  Your stay was

2    only in effect 30 days thereto.  So it's -- there's no longer a

3    stay in this case.

4            MS. UPPAL:  But all these violations happened in the

5    first 30 days.

6            THE COURT:  You have -- you say something is debited.

7    When did that occur?

8            MS. UPPAL:  That's -- what happened was after they

9    got served with the --

10           THE COURT:  Are you on this case?

11           MR. LINSENMAN:  I am, Your Honor.

12           THE COURT:  State your name and affiliation.

13           MR. LINSENMAN:  Colin Linsenman on behalf of Las

14   Palmas Condominiums Association.

15           THE COURT:  Okay.  Make sure you find a microphone.

16           MR. LINSENMAN:  I'm sorry.

17           THE COURT:  Okay.  All right.  And this was the case

18   against you, and here it is.  What I have on this, though, is

19   the debtor argues that the condo association continues to debit

20   her account and she seeks damages.  Now, you filed an answer,

21   but your answer didn't give me any information.  It just said

22   you deny allegations.  So that doesn't help me in this case,

23   and this is an adversary proceeding.

24           So -- but I have some questions for you.  When are

25   these debitings being occurred?  When did they occur?

1           MS. UPPAL:  Okay.  So what happened, the case was

2    where I had paid -- I was paying the condo association dues,

3    but they wanting -- they then posted and filed foreclosure

4    action in Florida.  So now, when I file bankruptcy, I serve

5    them.  So what they did was went ahead to the state court,

6    circumventing the bankruptcy court, and got ex parte orders

7    getting in my counterclaim and everything else dismissed in

8    violation of the order.

9           THE COURT:  How much was taken?

10          MS. UPPAL:  So the orders -- the claims -- they've

11   taken by the order or by the --

12          THE COURT:  How much was -- you said in your

13   complaint that your account was debited.  When did this occur?

14          MS. UPPAL:  That was -- initially, it was --

15   initially, the payments were $1,000.  And then, when the

16   counterclaims were dismissed, that -- and then, they basically

17   got judgments against me during the pendency of the -- this

18   case.

19          THE COURT:  Okay.  I'm only dealing with the 30 days

20   from August the 15th.

21          MS. UPPAL:  Yes, Your Honor.

22          THE COURT:  Was your account debited during that

23   period from August the 15th to September the 14th?

24          MS. UPPAL:  Judge, the violation was not on debiting

25   the account.  The violation was going to the state court for

1  enforcing the debt during the stay.

2          THE COURT:  Yes, sir.

3          MR. LINSENMAN:  Your Honor, I -- we deny that --

4          THE COURT:  Okay.  Denials -- blanket denials don't

5  help me.  If you don't believe there's a case, file a motion to

6  dismiss.  Do something and answer it in such a way that I can

7  follow what you're doing.  The stay was in effect from August

8  the 15th to, basically, September the 14th or 15th.

9          MR. LINSENMAN:  Correct.

10          THE COURT:  So answer it.  Pretend she's a Harvard

11  law graduate and treat it as such for me.

12          MR. LINSENMAN:  Regarding the debiting of any

13  accounts, all I can tell you is that my client does not believe

14  and never did debit any of her accounts, so --

15          THE COURT:  You've got to do it in a way that is

16  formal.  I hear what you say, but you just did blanket denials.

17  That doesn't help anybody.  Doesn't help her, doesn't help me.

18  So do something procedurally under the federal rules of

19  bankruptcy, which is the Federal Rule of Civil Procedure,

20  because it is an adversary proceeding.

21          MR. LINSENMAN:  I understand, Your Honor.  I'll file

22  a motion.

23          THE COURT:  So you have to do this with much more

24  formality than what you did do.

25          MR. LINSENMAN:  Okay.

1           THE COURT:  Okay.  So --

2           MS. UPPAL:  The other issue is that the claim is

3   totally based on that reason as, you know, fraudulent, and it's

4   escalating the amount of my debt, which is all fake.  I don't

5   owe these monies.  So that's another objection on the claim.

6           THE COURT:  And this didn't need to be an adversary

7   to begin with.  This is really a motion.  But she put it as an

8   adversary.  You've got to treat it as an adversary.  And what

9   she just said is she needs to be objecting to the claim, and

10  she needs to file a motion.  If there was, in fact, a violation

11  of that 30-day period, she needs to be filing something that

12  way.  It's in an adversary proceeding.  It really probably

13  shouldn't be there, but I'm not doing the Rules of Civil

14  Procedure.  And she has a lawyer for other things.  It might be

15  wise to speak to that lawyer.  But you do it with formality.

16          MR. LINSENMAN:  I will, Your Honor.

17          THE COURT:  And then, when did this violation occur?

18          MS. UPPAL:  It was September 4th, I believe.

19          THE COURT:  2016?

20          MS. UPPAL:  Yeah.

21          THE COURT:  And which violation are you talking

22  about?

23          MS. UPPAL:  It is when he went to the court -- they

24  went to the court ex parte and started getting all the claims

25  that would have been in my favor dismissed, and basically



1  client went forth there that which is --

2            THE COURT:  Okay.

3            MS. UPPAL:  -- fabricated to begin with.

4            THE COURT:  Then, let's concentrate on that.  If it

5  really was September the 4th, then we have something to look at

6  here.  But if it's a violation of the automatic stay, that's a

7  motion.  That's not an adversary proceeding.  So you help me

8  and you help me by doing this right.  Right now, you've got an

9  adversary proceeding that I just can't dismiss outhand, so

10  we'll come back on the adversary proceeding July 13th unless

11  you can get something worked out.

12            All right.  Now, then, 17-01026, Uppal v. Rodriguez.

13            MR. INDEST:  Your Honor, just a point of information,

14  I don't represent Mr. Rodriguez, but Mr. Wilkinson, Barry

15  Wilkinson, had called me.  He wanted to be here.  He could not

16  be here.  My understanding is he's listening in on the court's

17  telephone line.

18            THE COURT:  He is not here.

19            MR. INDEST:  Correct.  It was changed from earlier.

20            THE COURT:  Same thing, an answer was filed, and the

21  main argument seems to be that the creditor did not have notice

22  of the stay as the wrong address was used.  Again, in this

23  case, Ms. Uppal, when was --

24            MS. UPPAL:  Your --

25            THE COURT:  -- when was the money taken?

23

1          MS. UPPAL:  He filed the garnishment on 8/29, and I

2    have phone records and I have attached it to my -- that we

3    had --

4          THE COURT:  Okay.  Well, I'm not ruling.  It's an

5    adversary proceeding.  You've put it in litigation.  But has

6    the money been returned to you during that 30-day period of

7    time.

8          MS. UPPAL:  The bank actually -- I reported to the

9    bank.  I went to the bank, showed them, so they did not garnish

10   the money.

11         THE COURT:  Okay.

12         MS. UPPAL:  But he was well notified.  We had a long

13   conversation on the phone.  I have the phone records.

14         THE COURT:  But that money was returned to you?

15         MS. UPPAL:  Yes, Your Honor.

16         THE COURT:  Again, you speak to him --

17         MS. UPPAL:  Not all the money.  The new -- there is

18   no -- he's holding about $40,000 of the money which is not

19   returned.

20         THE COURT:  Okay.  Just so you know, I will give you

21   the same lecture I've given the other gentleman.  This is a

22   formality.  We now have a lawsuit within bankruptcy.  It must

23   be treated as a lawsuit.  Blanket denials do not work.

24   Argument of not the correct address might not work in

25   bankruptcy, but I need to advise both creditors that actual

1  damages can be awarded if there is a stay violation during that

2  30-day period, and if the money is not properly returned,

3  punitive damages could ensue.  So take a look at your records.

4  That's why I keep harping on know what happens and know the

5  timeframes and give me information.

6        MR. INDEST:  I'll pass that word along to

7  Mr. Wilkinson, ma'am.

8        THE COURT:  Yes.  Very good.  Now, then, Uppal v. the

9  Heath Law Firm.

10        MR. INDEST:  Yes, Your Honor.

11        THE COURT:  State your name again for the record.

12        MR. INDEST:  My name is George F. Indest, III.  I'm

13  president of The Health Law Firm.  First, I'd like to clarify

14  something because I believe there's been some confusion on

15  here.

16        THE COURT:  Okay.

17        MR. INDEST:  The name of my law firm was actually

18  George F. Indest, III, P.A. - Health Law Firm.

19        THE COURT:  Okay.  Then, remember, we have a

20  adversary proceeding.  It's civil litigation.  You might make a

21  difference in how you do your pleadings in response.

22        MR. INDEST:  Yes, Your Honor.  And we believe that

23  George Indest was -- when the adversary proceeding was filed,

24  and I've got a copy of it in my hand here, she put The Health

25  Law Firm, George Indest.  She's garbled the names on a number

1  of prior pleadings, and we don't believe that George Indest,

2  individually, should have been named there, but that's the way

3  the clerk of court picked it up.

4          THE COURT:  Okay.  And instead of an answer, you

5  filed a motion for summary judgment, which, in reality, under

6  federal law, is a motion to dismiss.

7          MR. INDEST:  Correct.  We filed it under both Rule 12

8  or 7012 and also under Rule 56, Your Honor.

9          THE COURT:  And you also did a 9011 sanction?

10         MR. INDEST:  Yes, Your Honor.  That was -- and we've

11 actually filed a separate motion on that now because we served

12 a separate motion on her previously, and now we filed --

13         THE COURT:  And when did this action supposedly

14 occur?

15         MR. INDEST:  We don't know.  She's made no specific

16 allegations at all in her complaint.  She -- it looks like she

17 used the same adversary complaint against all five of the

18 adversary defendants.  She just did scratching stuff out and

19 writing stuff in by hand.  We didn't even have any sort of an

20 account for her to debit.

21         THE COURT:  But did you do any kind of action -- in

22 your motion to dismiss, you did no action between August the

23 15th and September the 14th?

24         MR. INDEST:  That is correct, Your Honor.  At that

25 point --

26

1          THE COURT:  So that's the grounds of your motion to

2    dismiss?

3          MR. INDEST:  Correct.

4          THE COURT:  That nothing happened during this

5    automatic stay period?

6          MR. INDEST:  Correct.

7          THE COURT:  Very good.  And the other thing is the

8    9011.

9          MR. INDEST:  Yes.

10         THE COURT:  Okay.  I'm going to grant -- let me hear

11   from you, though.

12         MS. UPPAL:  Your Honor, he's totally misrepresenting,

13   and I have attached his motion.  During the pendency of the

14   first 30 days, his attorney fee was under appeal.  And they

15   start making orders during the appeal, so I filed a motion for

16   reconsideration that the case is in bankruptcy and you cannot

17   enforce any judgment at this time.  He wrote a very vehement

18   document, and he's totally misrepresenting, telling the

19   appellate court that -- why they should not follow the

20   automatic stay of the bankruptcy court.  And so his motion,

21   because he is an attorney and I am pro se, was granted, and

22   again, during this bankruptcy.  So --

23         THE COURT:  Not during the bankruptcy.  Remember, and

24   listen to me carefully --

25         MS. UPPAL:  During the stay of the bankruptcy.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

1  Because what happened was, there was first 30 days.  Then, the

2  judge entered an order to show cause to extend the stay, and

3  the stay was then extended until February 8th.  So there was

4  automatic stay until February 8th.

5           THE COURT:  I don't have that, and that's not an

6  order on the docket.

7           MS. UPPAL:  Yes, Your Honor.  The order is on --

8           THE COURT:  No, it's not.  Ma'am, you're arguing with

9  me and I looked at the docket.  It's not on the docket.  If

10  it's not on the docket, it's not enforced.

11           MS. UPPAL:  It's on January 8th.  It's docket --

12  order number -- when you click it, it says that you cannot --

13  it's not for public -- it's on the docket, but you can't open

14  the order because when you --

15           THE COURT:  You're talking to a judge in the case.

16  You think I can't open it?

17           MS. UPPAL:  I'm telling you from me, but I can give

18  you a -- resubmit the copy of the order, but --

19           THE COURT:  The order to show cause did not extend

20  the automatic stay.  The automatic stay was 30 days.  That's

21  it.

22           MS. UPPAL:  Your Honor, the -- and generally, the

23  order to show cause --

24           THE COURT:  I'm actually ruling.  The automatic stay

25  is not extended.  I don't need any other argument.  It's done.

28

1          MS. UPPAL:  Well, but for the purposes of the

2     argument on this case, on the adversary, so then, the other

3     thing is that I had hired Mr. Indest for one pleading.  And I

4     have never seen Mr. Indest until today.

5          THE COURT:  Excuse me, let me clarify the record.

6     The order on January the 9th denied the debtor's motion for

7     continuance of the automatic stay.  It was not extended, and

8     that's what the record shows.  So it was not extended, period.

9     We've just looked at the order.  It's just been called up.  I

10    have now looked at it.

11         MS. UPPAL:  Judge, that was on February 8th, it was

12    not extended.  But for an order to show cause

13         THE COURT:  On February the 7th, it was denied --

14    ma'am, it was denied.  Listen to me.  I don't sit up here and

15    lie.  I'm looking at the record.  It was denied.

16         Now, then, I'm going to grant your motion to dismiss.

17    Now, but I want to talk about 9011.  I want you to sit down and

18    listen to me.  9011 -- this is federal law we're dealing with

19    here -- has a safe harbor provision.  If a party is moving for

20    sanctions, the motions for sanction may not be filed with or

21    presented to the court unless, within 21 days after the service

22    of the motion or other such period as the court may prescribe,

23    the challenging challenge, paper, claim, defense, contention,

24    allegation, or denial is not withdrawn or appropriately

25    corrected.

1        Only after that 21-day safe harbor period may the

2    moving party file its motion with the court.  The purpose of

3    the safe harbor is to give the parties the opportunity to

4    correct their errors with the practical effect being that a

5    party cannot delay serving its Rule 9011 motion until

6    conclusions of the case.

7        MR. INDEST:  Your Honor, if I may, we're willing to

8    withdraw that part of our motion.

9        THE COURT:  Very good.

10       MR. INDEST:  We did file a separate motion and we did

11   previously serve a different motion on both Ms. Uppal and on

12   her counsel on May the 5th, and we have now refiled.

13       THE COURT:  So you have now given a safe harbor

14   provision saying that if you do not withdraw this -- okay.

15       MR. INDEST:  Yes, ma'am.

16       THE COURT:  I'm telling everyone now, and I do know

17   Ms. Uppal has competent counsel if she will listen to her

18   counsel, just saying.  So this now -- since you've withdrawn

19   this, it's not -- so since the safe harbor provision has not

20   been complied with at this time, you need to be aware that if,

21   in fact, you do -- 9011 applies to pro ses, as well as lawyers.

22   So be aware of that, okay?

23       Very good.  Now then --

24       MS. UPPAL:  Your Honor?

25       THE COURT:  Yes, ma'am.

30

1          MS. UPPAL:  Since he's saying that he is refiling the

2   same motions again, I would request that Your Honor rule on it

3   so that if he does the same thing, it already has been

4   considered as his motion has been --

5          THE COURT:  Absolutely not, Ms. Uppal.  Absolutely

6   not.  What he is now doing is complying with the federal rules,

7   and that's what you have now heard me chastise them for, and

8   now they are doing it properly.  And you need to pay attention

9   to it because it's really formal in federal court, and I am

10  really formal about these things.

11         Very good.  Now, then, we have Uppal v. Nationstar

12  Mortgage.  Again, I have general denials.

13         MR. GRISWOLD:  Yes.  And, Your Honor, we -- I

14  normally would be filing a preemptive motion to dismiss here.

15  The only reason we didn't was because of the pending motion for

16  relief that asked for nunc pro tunc because that would really

17  affect how we would make a dispositive motion.

18         THE COURT:  Okay.  Then, you need to make a

19  dispositive motion on this because it is, at this moment, still

20  an adversary proceeding.  And if we continue in an adversary

21  proceeding, I'm going to need scheduling orders.

22         MR. GRISWOLD:  Certainly.  No, we will be making a

23  motion to dismiss shortly, provided we have Court's permission.

24         THE COURT:  Yes.

25         MR. GRISWOLD:  All right.  Thank you, Your Honor.

1         17-01030, Uppal v. Wells Fargo.  State your name and

2   affiliation.

3         MS. DOYAGA:  Elizabeth Doyaga, Frenkel Lambert,

4   appearing on behalf of Wells Fargo.  In our answer, it was a

5   blanket denial, as well.  We were advised on the status letter

6   on the main bankruptcy case that debtor would be withdrawing

7   this adversary proceeding.

8         THE COURT:  I saw that.

9         MS. DOYAGA:  So -- and then, the most recent one that

10  was filed by debtor's counsel had advised that they are not --

11  no longer, so we, too, will be making a motion to dismiss and

12  further moving on with the adversary proceeding.

13        THE COURT:  Okay.  Very good.  So I'm -- I'll adjourn

14  everything -- all of these until July the 13th. You all work on

15  getting whatever needs to be done.

16        MR. INDEST:  You wanted me to submit an order on

17  mine, Your Honor?

18        THE COURT:  Absolutely.  And right in front of you is

19  how to submit orders.

20        MR. INDEST:  Thank you.

21        THE COURT:  Now, then, I believe that's everything,

22  correct?  Have I covered everything in those adversaries?  Did

23  you -- do we have -- did you get a motion to -- I granted your

24  motion to dismiss this.

25        MR. INDEST:  Yes, ma'am.

32

1          THE COURT:  And gave you caution about the 9011.

2          MR. INDEST:  Yes, ma'am.

3          THE COURT:  The 9011 is now continued until June

4    30th, but is it moot because of your motion to dismiss?

5          MR. INDEST:  No, Your Honor, because we had served,

6    on May the 5th, the preliminary motion on --

7          THE COURT:  But I think it may be because the case

8    was -- the adversary's going to be closed.

9          MR. INDEST:  We filed our motion until 9011 two days

10   ago.

11         THE COURT:  I understand, but your adversary is now

12   going to go away.

13         MR. INDEST:  She did not withdraw or cease the

14   offending conduct, causing us to come up here and spend the

15   fees to come from Florida all the way up here to litigate this,

16   Your Honor.  So we contend it's not moot.

17         MS. UPPAL:  Judge, I have not even received any

18   motion from him yet.

19         MR. INDEST:  We served her three different ways.  We

20   also served her counsel, Your Honor.

21         THE COURT:  Did you serve the address on the docket?

22         MR. INDEST:  Yes, we did, Your Honor, and her

23   electronic mail --

24         THE COURT:  You've got to keep your address current.

25         MS. UPPAL:  Judge, I am at that address.  I have not

33

1  -- he filed it two days ago here, and nothing's been served.

2            MR. INDEST:  She knows about it.

3            THE COURT:  July the 13th will be plenty of time.

4  I'll keep you on the docket.

5            MR. INDEST:  Thank you.

6            MS. KAVA:  Thank you, Your Honor.

7            MR. GRISWOLD:  Thank you, Your Honor.

8            THE COURT:  Very good.

9        (Proceedings concluded at 10:53 a.m.)

10                        *  *  *  *  *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

34

1                                     **C E R T I F I C A T I O N**

2

3          I, Alicia Jarrett, court-approved transcriber, hereby

4 certify that the foregoing is a correct transcript from the

5 official electronic sound recording of the proceedings in the

6 above-entitled matter.

7

8

9



10 _____

11 ALICIA JARRETT, AAERT NO. 428     DATE:  July 21, 2017

12 ACCESS TRANSCRIPTS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25